UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| JASON COHEN, M.D., F.A.C.S. AND PROFESSIONAL ORTHOPAEDIC ASSOCIATES, PA AS ASSIGNEE AND DESIGNATED AUTHORIZED REPRESENTATIVES OF PATIENT AM AND PATIENT AM, *Plaintiffs*, v. HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, *Defendants*. | Civil Action No. 15-4525 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

I.  **INTRODUCTION**

This matter comes before the Court on Plaintiffs Jason D. Cohen, M.D. ("Dr. Cohen") and Professional Orthopaedic Associates, PA's ("POA") (collectively "Plaintiffs") motion to remand to state court. Defendant opposes this motion.[1] This motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions, and for the reasons stated below, Plaintiffs' motion is denied.

---

[1] Plaintiffs' brief in support of its motion to remand will be referred to hereinafter as "Pl. Br." (D.E. 37), Defendant's opposition to Plaintiffs' brief will be referred to hereinafter as "Def. Opp'n" (D.E. 44), and Plaintiffs' reply brief in support of its motion to remand will be referred to hereinafter as "Pl. R.Br." (D.E. 45).

1

## II. FACTS[2] AND PROCEDURAL HISTORY

Dr. Cohen is a board certified orthopedic surgeon with an office in Tinton Falls, New Jersey. FAC ¶ 1. Dr. Cohen owns and/or operates POA, a professional medical association. *Id.* ¶¶ 1, 2. Patient AM was a patient of Dr. Cohen and POA. *Id.* ¶ 4. Defendant is an insurance company that is "the Plan Administrator for Plaintiff AM's health insurance plan." *Id.* ¶ 5. Neither party contests that the health insurance plan was a plan governed by the Employee Retirement Income Security Act ("ERISA"). This matter centers on Defendant's refusal to pay Plaintiffs for emergency medical services provided to Patient AM. Plaintiffs are allegedly assignees and designated authorized representatives of Patient AM. *Id.* ¶¶ 15, 31. Plaintiffs do not allege that they had a separate agreement, whether verbal or written, with Defendant regarding Plaintiffs provision of medical services to Patient AM.

On or about July 4, 2014, "[Dr.] Cohen performed emergency spinal surgery on Patient AM." *Id.* ¶ 20. Plaintiffs allege that the services were "medically necessary and appropriate according to recognized medical standards in the community where [Dr.] Cohen practices medicine." *Id.* ¶ 22. Subsequently, on July 18, 2014, "Dr. Cohen submitted a claim to Horizon in the amount of $169,390.00 for the [s]ervices rendered to Patient AM." *Id.* ¶ 24. Defendant did not pay the claim. *Id.* ¶ 30.[3] "On or about November 24, 2014, POA and Dr. Cohen filed an appeal [with Defendant] as 'the designated representative' of patient AM." *Id.* ¶ 31. By a letter dated December 22, 2014, Horizon denied the appeal. *Id.* ¶ 32. On or about February 26, 2015, POA

---

[2] The facts of this matter derive from Plaintiffs' First Amended Complaint ("FAC"). D.E. 17. In ruling on a motion to remand, "the district court must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

[3] According to the parties' briefs, since the filing of the complaint, Defendant has paid Plaintiffs a few thousand dollars. Pl. Br. at 6; Def. Opp'n at 3.

2

and Dr. Cohen submitted a second appeal. *Id.* ¶ 34. By a letter dated March 22, 2015, Horizon denied the second appeal. *Id.* ¶ 36. Subsequently, Plaintiffs brought the present action seeking to recover the unpaid amounts. *Id.* ¶¶ 38-42.

On May 15, 2016, Plaintiffs filed a four-count complaint in the Superior Court of New Jersey against Defendant, which asserts: (1) Violation of N.J.A.C. 11:24-5.3, (2) Unjust Enrichment, (3) Violation of the New Jersey Healthcare Information and Technologies Act ("HINT"), and (4) Misrepresentation. D.E. 1., Ex. A. On June 26, 2015, Horizon removed the action to this Court, alleging federal question jurisdiction on the grounds that all of the state law claims asserted in the complaint were preempted by ERISA. *Id.* On July 17, 2015, Horizon moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.E. 4. Judge Linares dismissed the complaint without prejudice and allowed Plaintiffs to file an amended complaint to cure any noted deficiencies. D.E. 15. Judge Linares did not reach the ERISA preemption issue raised by Defendant. *Id.* Plaintiffs subsequently amended their Complaint on December 4, 2015, alleging the following causes of action: (1) violation of N.J.A.C. 11:24-5.3 ("emergency services regulation"), (2) unjust enrichment, and (3) violation of HINT.[4] FAC ¶¶ 43-72. Defendant answered the FAC. D.E. 20. Plaintiffs now move to remand. D.E. 37.

Plaintiffs allege that this Court lacks subject matter jurisdiction to hear this case and therefore the case should be remanded to state court. Pl. Br. at 1. Since the claims alleged are premised on New Jersey regulations related to emergency medical treatment, Plaintiffs allege that they are not preempted by ERISA. *Id.* at 3. Defendant responds that Plaintiffs are essentially

---

[4] The amended complaint provides no statutory cite for HINT. HINT can be found at N.J.S.A. 17B:26-9.1. In their moving brief, Plaintiffs cite N.J.A.C. 11:22-1.5 as the applicable regulation for Count III. The cited regulation, N.J.A.C. 11:22-1.5, implements N.J.S.A. 17B:30-26 through 34. N.J.A.C. 11:22-1.1. In other words, the cited regulation does not apply to HINT.

3

seeking reimbursement under the terms of an ERISA-governed health plan so that the state law claims are preempted, resulting in the Court having subject matter jurisdiction. Def. Opp'n at 1.

### III. LAW AND ANALYSIS

#### A. Standard of Review

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Initially when a case is filed in state court, a defendant may remove any action over which the federal courts have jurisdiction. 28 U.S.C. § 1441(a). The party removing the action has the burden of establishing federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). This burden is heavy, since removal statutes are "strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* For removal to be proper, a federal court must have original jurisdiction, that is, the removed claims must arise from a "right or immunity created by the Constitution or laws of the United States." *Concepcion v. CFG Health Sys. LLC*, No. 13-02081, 2013 WL 5952042, at *2 (D.N.J. Nov. 6, 2013); *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

In determining whether a complaint alleges a federal question, courts are generally guided by the well-pleaded complaint rule. According to the rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Concepcion*, 2013 WL 5952042, at *2. However, an exception to the well-pleaded complaint rule is found through complete preemption. Complete preemption applies when "Congress has so completely preempted a particular area" any complaint raising a claim in that

4

area is "necessarily federal in character" and may be removed to federal court. *LaMonica v. Guardian Life Ins. Co. of Am.*, No. 96-6020, 1997 WL 80991, at *3 (D.N.J. Feb. 20, 1997). Put differently, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). In short, complete preemption establishes federal jurisdiction even when there are no federal claims on the face of the complaint. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271 (3d Cir. 2001). ERISA's civil enforcement mechanism, Section 502(a), is "one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)).

On its face, Plaintiffs' FAC does not present a federal question. Rather, the FAC asserts state law claims pursuant to New Jersey regulations and common law. While the FAC does not expressly refer to ERISA, Defendant alleges that ERISA completely preempts the state law claims.

### B. ERISA PREEMPTION

Before addressing whether Plaintiffs' state law claims are completely preempted, the Court notes that under ERISA, the term "'preemption' is used in the law in more than one sense." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). The two forms of ERISA preemption are "complete preemption" under Section 502(a) and "ordinary preemption" under Section 514(a). *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997). The significant difference between complete preemption and ordinary (or conflict) preemption is that "[u]nlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption

5

operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *In re U.S. Healthcare*, 193 F.3d at 160.

In other words, if ERISA completely preempts a state law cause of action, then a defendant may remove the matter to federal court on that basis alone, "even if the well-pleaded complaint rule is not satisfied." *Joyce*, 126 F.3d at 171. To this end, ERISA's complete preemption provision, Section 502, is a misnomer, since it is "really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). "But if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 514(a) … the district court is without subject matter jurisdiction." *Id.*; *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (holding that "only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required"). By comparison, "[s]tate law claims which fall outside of the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995). In short, complete preemption pursuant to Section 502(a) is a matter of federal subject matter jurisdiction while conflict preemption under Section 514 is not.

At the outset, the Court notes that in their reply, Plaintiffs apparently confuse the two different types of preemption analyses under ERISA. Pl. R.Br. at 5-11. The cases analyzed by Plaintiffs address conflict preemption under Section 514, which does not provide a means to confer federal jurisdiction, but instead can be used as a defense in state court.

Here, the Court is addressing its subject matter jurisdiction. Thus, only Section 502(a) is relevant. Section 514 does not enter into the Court's analysis. Pursuant to Section 502(a), state law claims are completely preempted when (1) the plaintiff could have brought the action under Section 502(a) of ERISA and (2) no independent legal duty supports the plaintiff's claims. *See Davila*, 542 U.S. at 210; *Pascack Valley Hosp.*, 388 F.3d at 400. "Because [this] test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied." *N.J. Carpenters & Tr. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). As to the first prong of the *Davila* test, a claim may be brought under Section 502(a) "to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987); *see also Pryzbowski*, 245 F.3d at 272 ("[C]laims challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted under § 502(a)'s civil enforcement scheme.").

Additionally, when asserting a cause of action under Section 502(a), a plan's participant or beneficiary may assign his or her rights under the plan to a health care provider. *Vaimakis v. United Healthcare/Oxford*, No. 07-5184, 2008 WL 3413853, at *3 (D.N.J. Aug. 8, 2008). Doing so confers derivative standing on the health care provider. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (D.N.J. 2015). An assignment, however, does not change the preemption analysis except that a health care provider must also show that it "received *valid* assignments from individuals that receive benefits under an ERISA-governed plan." *Vaimakis*, 2008 WL 3413853, at *3. (emphasis added). Defendant has not contested Plaintiffs' assignment in its papers, so for the purposes of this analysis, the Court will assume a valid assignment.[5]

---

[5] The Court is not ruling that the assignment at issue was in fact valid or that it was not subject to anti-assignment provision. Instead, solely for purposes of this Opinion, the Court assumes the validity of the assignment.

7

A legal duty is "independent" if it "would exist whether or not an ERISA plan existed." *Marin Gen. Hosp.*, 581 F.3d at 950. Under the second prong, a court "must examine whether interpretation or application of the terms and scope of the ERISA insurance plan form an essential part of Plaintiff's claims." *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, No. 10-4260, 2011 WL 4737067, at *6 (D.N.J. June 30, 2011) (internal quotation marks omitted). Thus, this prong often turns on whether plaintiff's claims are "inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits." *Id.* at *7.

Generally, the Third Circuit has broadly addressed two separate scenarios concerning complete preemption pursuant to Section 502(a). The first involves suits by medical providers, rather than plan participants, against ERISA plans or plan administrators. *See, e.g., Pascack Valley*, 388 F.3d at 395. The second concerns plan participants' direct suits against the plans or their administrators. *See, e.g., Pryzbowski*, 245 F.3d at 271. The current matter involves the first scenario, which would logically lead to the conclusion that the Court should analyze this case pursuant to *Pascack Valley* and its progeny. However, *Pascack Valley* concerned a medical provider's separate agreement, apart from the ERISA plan itself, with the administrator of the plan. Here, Plaintiffs do not allege that they had a separate agreement with Defendant which entitles Plaintiffs to payment. As a result, the Court finds that the facts of *Pascack Valley* and similar cases do not easily lend themselves to a comparative analysis to the present matter. As a result, the Court will consider the analysis in *Pryzbowski* and related cases as their guidance is pertinent to the issues here.

In *Pryzbowski*, the Third Circuit addressed the issue of "how a claim that the HMO or plan administrator delayed in the approval of benefits should be treated under ERISA." 245 F.3d at 273. There, the plaintiff had an insurance policy with defendant which required her to receive

prior written authorization for services performed by non-participating providers and facilities. *Id.* at 269. In conjunction with a back injury, the plaintiff requested approval from defendant to receive surgery from a non-participating surgeon. *Id.* After six months of requesting such authorization, the plaintiff received approval and underwent the surgery. *Id.* However, due to the delay, the plaintiff continued to suffer back pain after the procedure. *Id.* at 270. As a result, the plaintiff asserted claims alleging that the defendant "negligently and carelessly delayed in authorizing and/or obtaining authorization [] for the surgery." *Id.*

The plaintiff filed her complaint in state court, and the defendant removed the case to federal court. The district court held that removal was proper since the plaintiff's claims were completely preempted pursuant to Section 502, and the plaintiff appealed. *Id.* at 271. In reviewing whether the plaintiff's state law claims were preempted by ERISA, the Third Circuit reviewed cases which had focused on "the distinction between claims raising quality of care issues," which *were not* preempted by ERISA and "claims raising quantity of benefits issues," which *were* completely preempted. *Id.* at 272. Yet, the *Pryzbowski* court noted that "the distinction will not always be clear." *Id.* Thus, the Third Circuit laid out an alternative to the quality/quantity framework for determining whether a case is completely preempted under Section 502(a) of ERISA. *Id.* at 273. This framework distinguished between "eligibility decisions, which turn on the plan's coverage of a particular condition or medical procedure for its treatment" and "treatment decisions, which are choices in diagnosing and treating a patient's condition." *Id.* (internal quotation marks omitted). The court in *Pryzbowski* concluded that "the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action." *Id.*

9

*Pryzbowski* also acknowledged that there was a category of cases falling between the two poles of eligibility and treatment, and in those cases it is necessary to look to Section 502(a), keeping in mind that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* The claims at issue in *Pryzbowski* fell into the third category, with the court ultimately determining that the claims were "limited to [defendant's] delay in approving benefits," which fit "squarely within administrative function" and were therefore completely preempted by ERISA. *Id.* at 274.

After *Pryzbowski*, the Third Circuit again recognized that certain cases did not fit neatly within the two analytical parameters set forth in *Pryzbowski*. *See Levine v. United Healthcare Corp.*, 402 F.3d 156, 162 (3d Cir. 2005). In *Levine*, the Third Circuit looked "beyond the framework set out in *Pryzbowski* to determine whether [the] case [fell] within section 502(a)." *Id.* In *Levine*, the plaintiffs suffered personal injuries and their medical expenses were initially paid by defendant pursuant to the plaintiffs' ERISA health plan. *Id.* at 159. After they settled their underlying tort cases, the plaintiffs reimbursed their health insurance companies for their medical expenses. *Id.* at 159-60. Several years later the New Jersey Supreme Court invalidated the New Jersey regulation that had required the plaintiffs to reimburse their insurance companies. *Id.* at 160. The plaintiffs in *Levine* then brought suit to recover the amounts that they had previously reimbursed defendants. *Id.*

The Third Circuit determined that plaintiffs' claims were essentially claims for "benefits due" and were therefore completely preempted by ERISA. *Id.* at 163. Comparing the claims to those in *Pryzbowski*, the Third Circuit found that the claims were more akin to challenges to the "administration of benefits" than challenges to the "quality of benefits received." *Id.* Noting that "[i]t is impossible to determine the merits of the [i]nsureds' claims without delving into the

provisions of their ERISA-governed plans," the *Levine* court held that the claims were completely preempted by ERISA and federal subject matter jurisdiction was appropriate. *Id.*

In *Difelice v. Aetna U.S. Healthcare*, the Third Circuit once again addressed ERISA preemption in the context of a claim that did not fall directly into one of *Pryzbowski's* two discrete categories. 346 F.3d 442, 449 (3d Cir. 2003) ("[T]he decision here was in some sense both a medical treatment and an eligibility decision."). In *Defelice*, the plaintiff claimed that his insurance provider negligently interfered with his medical care by denying plaintiff access to a special tracheostomy tube and by forcing plaintiff to be discharged too soon. *Id.* at 445. The plaintiff's medical benefits were provided pursuant to an ERISA plan that was administered by the defendant. *Id.* at 444.

Under the plan, the plaintiff was entitled to covered benefits if defendant made the determination that they were "medically necessary." *Id.* at 444. After defendant made the decision that the special tracheostomy tube was not medically necessary and therefore not covered, plaintiff's doctor used a different tube that resulted in pain, infection, and surgery. *Id.* Relying on *Pryzbowski*, the court in *Difelice* found that the defendant's decision on whether to approve the specific tube fell between the two clear cut categories of eligibility and medical treatment. As a result, the Third Circuit referred to section 502(a) to determine whether the claim could have been the subject of a civil enforcement action under ERISA. *Id.* at 449. The *Difelice* court concluded that defendant's decision could only have been an eligibility decision because there was no allegation that defendant actually provided the medical care. *Id.* at 449. The plaintiff therefore could have brought a 502(a) action to request an injunction or recover for benefits due to him under the plan. *Id.* Concluding that the plaintiff could have brought the tracheostomy claim under ERISA, the Third Circuit held that it was completely preempted. *Id.*

As to the count concerning the plaintiff's discharge, the court found that there was not enough information to demonstrate it was preempted by ERISA. *Id.* at 452-54. Unlike the first claim, the plaintiff did not allege that the hospital stay was "medically necessary," nor did the plaintiff rely on his plan's discharge policy. *Id.* at 452. Since there was nothing in the pleadings to suggest that the defendant was following the plan's terms in suggesting discharge, the *Difelice* court held that the count was not clearly "plan-related." *Id.* The Third Circuit concluded that, as a result, the count was not completely preempted and could be brought pursuant to state law negligence liability. *Id.*

With the foregoing guiding its analysis, the Court now turns to whether Plaintiffs' claims are completely preempted pursuant to Section 502(a).

Count I

Plaintiffs bring Count I under N.J.A.C. 11:24-5.3, a New Jersey regulation promulgated pursuant to the authority set forth in N.J.S.A. 26:2J-1 *et seq.*[6] Plaintiffs allege that, pursuant to the emergency services regulation, an insurance carrier must "limit a member's liability for emergency care rendered by non-participating providers." FAC ¶ 50.

The regulation begins by stating that "[t]he HMO[7] shall establish written policies and procedures governing the provision of emergency and urgent care which shall be distributed to

---

[6] N.J.S.A. 26:2J-1 *et seq.* applies to Health Maintenance Organizations, or HMOs. Defendant has not argued that the regulation, in light of the underlying statute, does not apply to Defendant. Likewise, Plaintiff has not proven that the regulation permits a private cause of action, and Defendant has not contested whether a private right of action exists. As a result, solely for purposes of this Opinion, the Court will assume that the regulation applies to Defendant and Plaintiffs have a private right of action. However, the Court is not finding that Defendant is necessarily governed by the regulation nor is the Court finding that Plaintiffs have a private cause of action pursuant to the regulation.

[7] HMO stands for Health Maintenance Organization. "HMO," and other specific words and phrases such as "carrier," are subject to specific definitions set forth in N.J.A.C. 11:24-1.2. Neither

each subscriber at the time of enrollment." N.J.A.C. 11:24-5.3.  Subsection 5.3(b)(3) of the regulation indicates that "[e]mergency and urgent care services shall include, but are not limited to ... [c]overage for out-of-service area medical care when medically necessary for urgent or emergency conditions where the member cannot reasonably access in-network services." *Id*. And finally, the regulation states that, with respect to the services provided (including those in (b)(3)), "carriers shall reimburse hospitals and physicians for all medically necessary emergency and urgent health care services *covered under the health benefits plan*, including all tests necessary to determine the nature of an illness or injury, in accordance with the provider agreement when applicable." *Id*. 5.3(c) (emphasis added).

Here, prong one of the *Davila* test is met.  At the outset, no argument is made concerning the treatment decisions or the quality of treatment (to the contrary, Plaintiffs claim that they provided appropriate treatment), so the clear non-ERISA category set forth in *Pryzbowski* is not relevant.  Instead, Plaintiffs argue that the regulation explicitly provides that they are entitled to their normal and customary fees.  Plaintiffs' argument, however, misses a key condition precedent to this payment.  The emergency health services for which reimbursement is sought must first be "covered under the health benefits plan[.]" N.J.A.C. 11:24-5.3(c).  Thus, the threshold question is what benefits were covered under Patient AM's health plan?  As a result, it is impossible to determine the merits of Plaintiffs' claim without first reviewing the provisions of Patient AM's ERISA-governed plan.  Like *Levine* and *Defelice*, this requirement puts Plaintiffs' claim squarely within Section 502(a)'s complete preemption reach.

---

party has addressed whether the particular definitions impact the Court's analysis. For example, Plaintiff has alleged that Defendant is a "plan administrator." Nowhere has Plaintiff alleged that Defendant is either an HMO or a carrier as defined under the regulation.

Prong two of the *Davila* test is similarly met since the emergency services regulation does not create an independent legal duty. Again, the regulation requires the benefits covered to be determined by a review of Patient AM's plan. The regulation requires an HMO (see, *supra*, notes 8 & 9) to "establish written policies and procedures governing the provision of emergency and urgent care" and goes on to provide what that care includes, but the plan itself is the source for determining which services are "covered." Thus, the regulation does not create an independent legal duty and Count I is preempted by ERISA.

Count II

In Count II Plaintiffs bring a claim against Defendant for unjust enrichment. Plaintiffs allege that "[f]ailure of Defendant to [] pay for the Services rendered to Patient AM by Dr. Cohen and POA would be unjust." *Id.* ¶ 58.[8] To demonstrate unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust and that the plaintiff expected remuneration and the failure to give remuneration unjustly enriched the defendant." *EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 440 N.J. Super. 325, 350 (App. Div. 2015) (internal quotation marks omitted). Again, Plaintiffs do not base their unjust enrichment claim on an independent agreement with Defendants; instead Plaintiffs rely on Patient AM's plan and Plaintiffs' status as an alleged assignee and designated representative of AM.

---

[8] Although Plaintiffs are asking for a complete remand, they inexplicably fail to address Count II - whether ERISA preempts their claim for unjust enrichment. If the Court found that ERISA preempts Count II (as it does), then it would not need to address preemption with respect to Counts I and III since it could exercise supplemental jurisdiction over those claims. *See Pryzbowski*, 245 F.3d at 275-76 (finding that when ERISA preempted certain state law claims, the district court properly exercised supplemental jurisdiction over the remaining state law claims because they "[were] derived from the same factual predicate" and therefore should "be combined in one judicial proceeding").

Plaintiffs point to no case in which an out-of-network physician or medical practice has been able to proceed with an unjust enrichment claim against a plan administrator solely because medical services have been provided to a plan participant. Indeed, Plaintiffs have not addressed their unjust enrichment claim in any detail. *See* note 11, *supra*. As a result, the Court assumes that the basis for Plaintiffs' claim is its alleged assignment from Patient AM. While the assignment can confer derivative standing for ERISA claim purposes, the assignment works to put Plaintiffs in the shoes of AM. AM, in turn, could bring a claim pursuant to Section 502(a), which by definition meets the first prong of *Davila*. Also, such a claim would be dependent upon, rather than independent of, AM's plan. So, the second prong is also met. Plaintiffs' unjust enrichment count is therefore subject to complete preemption.

Count III

In Count III, Plaintiffs apparently allege a violation of N.J.A.C. 11:22-1.5.[9] Plaintiffs allege that the regulation "requires that a health insurer, such as the Defendant, shall remit payment for every insured claim no later than the 30th calendar day following receipt of the claim." *Id.* ¶ 64. N.J.A.C. 11:22-1.5, titled "Prompt payment of claims," provides that:

> (a) A carrier and its agent shall remit payment of clean claims pursuant to the following time frames:
>
> 1. Thirty calendar days after receipt of the claim where the claim is submitted by electronic means or the time established for the Federal Medicare program by 42 U.S.C. § 1395u(c)2(B), whichever is earlier; or
>
> 2. Forty calendar days after receipt of the claim where the claim is submitted by other than electronic means.

---

[9] As discussed in note 6, Count III lists HINT (without citation) but then make allegations consistent with N.J.A.C. 11:22-1.5 and Plaintiffs claim in their brief that N.J.A.C. 11:22-1.5 is the pertinent regulation. As a result, the Court is substantively analyzing the count pursuant to the regulation.

> (b) Carriers and their agents shall pay claims that are disputed or denied because of missing information or documentation within 30 or 40 calendar days of receipt of the missing information or documentation, as applicable, pursuant to (a) above.

N.J. Admin. Code § 11:22-1.5(a) & (b).

The regulation only applies to "clean claims."[10] A "clean claim" is, in turn, defined in N.J.A.C. 11:22-1.2. Among other things, the term means that "the claim is for a service or supply *covered by the health benefits plan*[.]" *Id.* (emphasis added). As a result, and for similar reasons discussed concerning Count I, Count III is completely preempted. First, Count III could be brought pursuant to Section 502(a) because it is a claim to recover benefits or enforce rights under AM's plan. To do so, Count III requires the Court to delve into AM's plan to determine what is covered. Second, Count III is not based upon an independent legal duty. To the contrary, the regulations make clear that basis for recovery is determined by the plan itself and what is covered.

In sum, each of Plaintiffs' three asserted claims are completely preempted by Section 502 of ERISA, and the Court has subject matter jurisdiction. Therefore, Plaintiffs' motion to remand is denied.

## IV. CONCLUSION

---

[10] Defendant disputes that N.J.A.C. 11:22-1.5 applies to the present claim since the regulation only applies to "clean claims" and "does not apply to claims that are denied or disputed." Def. Opp'n at 7 n.5. Since this claim is disputed, Defendant contends that the regulation is not applicable. *Id.* Additionally, Defendant argues that pursuant to *Briglia v. Horizon Healthcare Services, Inc.*, No. 03-6033, 2005 WL 1140687, at *1 (D.N.J. May 13, 2005), no private cause of action exists to pursue a violation of the PPA. Def. Opp'n at 7 n.5. Defendant is incorrect in its analysis of *Briglia*. In *Briglia*, the court found that N.J.A.C. 11:22-1.5 was inapplicable to the facts there and thus did not reach the issue of whether the statute contained a private cause of action. *Id.* at *11. Here, since there is no pending motion to dismiss, the Court does not reach the issues raised by Defendant – whether Plaintiffs have adequately pled a clean claim or whether Plaintiffs have a cause of action pursuant to the regulation. The Court is analyzing the regulation solely in terms of ERISA complete preemption. However, nothing in this Opinion prohibits Defendant from raising its arguments in an appropriate motion if it so chooses.

For the reasons set forth above, Plaintiffs' motion to remand is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: February 21, 2017

                                         John Michael Vazquez, U.S.D.J.